**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALI CLAY, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 15-cv-2575 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Ali Clay ("Petitioner") is serving a 168-month sentence following a conviction for distribution of cocaine. Currently before the Court are Petitioner's *pro se* motion [1] to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 ("habeas petition") and motion [14] for leave to amend pursuant to Rule 15(a) of the Federal Rules of Criminal Procedure. For the reasons stated below, the Court grants Petitioner's motion for leave to amend [14] and grants in part and denies in part Petitioner's motion to vacate, set aside, or correct his conviction and sentence [1]. Specifically, based on a clear error in regard to the computation of Petitioner's criminal history that went unnoticed by trial counsel, appellate counsel, the Government, and the Court and that prejudiced Petitioner going forward, both at his original sentencing and his re-sentencing following a retroactive amendment to the Guidelines, the Court reduces Petitioner's sentence from 168 months to 151 months in the custody of the Bureau of Prisons.

## I.    Background[1]

In April and May 2009 and June 2011, Petitioner sold crack cocaine to a government informant known as "Poochie Man."  Petitioner was arrested following the June 2011 transaction.  At the time of his arrest, Petitioner confessed to Special Agent ("SA") Christopher Labno of conducting extensive drug sales since April 2009.  According to SA Labno, Petitioner confessed that he had been selling Poochie Man crack for several years and had done approximately ten to twelve transactions with him since 2009, with two transactions for 63 grams and the rest of either an ounce (28.35 grams) or an "8-ball" (3.5 grams).  R. 107 at 25-28.  According to Agent Labno, Petitioner also confessed that from 2009 until the time of his arrest, he "overall on average" sold between 63 and 125 grams of crack every 3 to 4 days, for a total drug volume of approximate 11 kilograms (11,000 grams).  *Id*. at 37-38.

Petitioner was charged with three counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  See R. 12.  Petitioner pled not guilty.   Petitioner also moved to suppress the incriminating statements he had made following his arrest, on the ground that he was so intoxicated that he could not validly have waived his Fifth Amendment rights to remain silent and to have counsel present during questioning.  See R. 36.  At the suppression hearing, Petitioner testified that he had exaggerated the amount of drugs he sold in order to make himself more valuable to the Government as a potential confidential informant.  See R. 107 at 154.  The Court "credited the agents' testimony that [Petitioner] had appeared calm and lucid, said nothing about being intoxicated, talked at length about multiple drug deals, and even tried to negotiate with the agents."  *United States v. Clay*, 562 Fed. Appx. 531, 532-33 (7th Cir. 2014).  The Court

---

[1] Citations to "R." (such as "R. 7 at 12") refer to documents in the docket in Petitioner's underlying criminal case, No. 11-cr-399-1.  Citations in brackets (such as [12] at 3) refer to documents in the docket in this habeas case, No. 15-cv-2575.

therefore concluded that Petitioner's plea was knowing and voluntary and denied his motion to suppress.

Following the denial of his motion to suppress, Petitioner entered a change of plea. See R. 81. Petitioner signed a plea declaration stating that he distributed between 112 and 196 grams of cocaine base between April 11, 2009 and June 9, 2009 and, after a hiatus, distributed between 28 and 112 grams of cocaine base. R. 82. at 7. The plea declaration contained an anticipated advisory Sentencing Guidelines range of 70-87 months' imprisonment, subject to a ten-year mandatory minimum of 120 months, which was based on an anticipated criminal history category of III and an anticipated three-level reduction in offense level for acceptance of responsibility. In the plea declaration, Petitioner acknowledged that he understood the advisory Guidelines calculations were "preliminary in nature and . . . non-binding predictions"; that "the Court ultimately determines the facts and law relevant to sentencing"; that "the validity of [his] [d]eclaration [wa]s not contingent upon . . . the Court's concurrence with the . . . calculations"; and that he would "not have a right to withdraw his plea on the basis of the Court's rejection of the[] calculations." R. 82 at 9.

At the February 28, 2013 change of plea hearing, Petitioner acknowledged that he had read the plea declaration and reviewed it with his attorney before signing. Petitioner also stated that he understood that he faced a sentence of between 10 years (the mandatory minimum) and life. The Government informed Petitioner and the Court that, at sentencing, it would seek a 2-level enhancement for obstruction of justice and was reserving its right to object to a three-point reduction for acceptance of responsibility. R. 108 at 15-16. The Government took the position that it was a "close call whether [Petitioner] should be given acceptance if he continues to dispute his own statements to the agents when he has admitted the vast majority of that statement

is in fact true," and "the only statements he is not admitting in the statement are the ones exposing him to such a massive sentenc[e] under the Guidelines." *Id.* at 15. Petitioner's attorney took the position that Petitioner should receive the three-point reduction for acceptance of responsibility. *Id.* at 16.

Before accepting Petitioner's plea, the Court asked Petitioner if he understood that, "at sentencing, I will make a final determination as to what Guideline range should apply to this case." R 108 at 18. Petitioner responded, "Yes." *Id.* The Court also asked Petitioner, "if it turns out that the sentence is more severe than you were hoping for or than you expected, do you understand that you still would be bound by your plea and would have no right to withdraw it?" *Id.* Petitioner responded, "Yes." *Id.* Further, the Court asked Petitioner, "do you understand that the final decision as to what your sentence will be rests with the court?" *Id.* at 19. Petitioner responded, "Yes." *Id.* Petitioner then entered his guilty plea. *Id.* at 24-25.

The Court sentenced Petitioner on July 15, 2013. See R. 92. At the sentencing hearing, the Government took the position that Petitioner was responsible for 11 kilograms of cocaine. Petitioner took the position that he should be sentenced based on less than 200 grams. The Court found that Petitioner was responsible for between 280 and 840 grams of crack cocaine. R. 109 at 28, 43-45.

The Court also found that Petitioner had obstructed justice by testifying falsely at the suppression hearing, and gave him a two-point sentencing enhancement. The Court explained, "that's not mere accident and it's not mere misremembering or not remembering, but there was a lack of credibility that. . . suggests a contrived aspect to it rather than accidental or memory loss, and that's really where the court of appeals draws the line on obstruction of justice . . . the story he told just doesn't hold together in too many ways with too much detail for it not to have been

an attempt to obstruct justice." R. 109 at 46-47.  The Court also declined to give Petitioner the three-point acceptance of responsibility reduction that he sought.  According to the Court, "with the obstruction [enhancement], as a Guideline matter it would be very difficult" to also obtain a reduction for acceptance of responsibility, but noted that "there are circumstances in which you could get both an obstruction and an acceptance."  R. 109 at 69.  "[I]n any event," the Court concluded, Petitioner's acceptance was not as "robust as you need to" get the three-point reduction, because Petitioner "accepted some things and not others[.]"  *Id.* at 70.  Nonetheless, the Court gave Petitioner partial credit for acceptance of responsibility by taking it into consideration under Section 3553(a).  *Id.* at 49; see also 18 U.S.C.§ 3553(a).

The Court determined that Petitioner's final offense level was 34, his criminal history category was IV, and that the Guidelines range was 210 to 262 months imprisonment.  R. 109 at 42.  As to the criminal history category, the Court accepted Probation's calculation, which included 3 criminal history points for Petitioner's 2003 AUUW conviction.  See R. 84 at 16 (assigning 3 points to conviction).  In total, Petitioner was assigned 8 criminal history points, for a criminal history category of IV.  See R. 109, at 42, 68 (transcript of sentencing hearing); see also R. 84 at 19 (presentence investigation report showing total of 8 points for criminal history category of IV).  Petitioner's attorney did not object to these calculations.  The Court gave Petitioner a below-Guidelines sentence of 192 months, "in part" because of Petitioner's partial acceptance of responsibility.  R. 109 at 68.

Petitioner filed a notice of appeal to the Seventh Circuit.  See *United States v. Clay*, 562 Fed. Appx. 531 (7th Cir. 2014).  His appellate counsel filed an *Anders* brief asserting that the appeal was frivolous and seeking to withdraw as counsel.  *Id.* at 532.  Appellate counsel also informed the Seventh Circuit that Petitioner "does not wish to challenge his guilty plea."  *Id.*

Petitioner opposed his counsel's motion to withdraw.  *Id*.  The Seventh Circuit granted appellate counsel's motion to withdraw and dismissed Petitioner's appeal.

This  Court subsequently reduced Petitioner's sentence from 192 months to 168 months, based on an amendment to the Sentencing Guidelines which lowered the base offense levels applicable to narcotics offenses.  See R. 124, 126.

Petitioner now seeks to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255.  Petitioner's motion raises five issues, which are discussed in turn below. Petitioner also seeks leave to amend to add a sixth issue, which is discussed in conjunction with the first, related, issue.

## II.    Legal Standard

Petitioner seeks *habeas* relief under Section 2255.  A Section 2255 motion to vacate to set aside or correct a sentence will be granted only if the petitioner establishes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  The Seventh Circuit has stressed that "relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  A Section 2255 motion is not a substitute for a direct criminal appeal.  See *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).  If a petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate (1) cause for the procedural default and actual prejudice from the failure to appeal, *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005); (2) that enforcing the procedural default would lead to a

"miscarriage of justice," *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006); or (3) that there has been a change of circumstances involving facts or law, *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). "'[A]ttorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default.'" *Sanders v. Cotton*, 398 F.3d 572, 580 (7th Cir. 2005) (quoting *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999)).

In this case, all of Petitioner's arguments are premised on the alleged ineffectiveness of his trial and/or appellate counsel. In order to prevail on an ineffective assistance of counsel claim, Petitioner must meet the two-pronged "performance" and "prejudice" test set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Petitioner first must establish that his lawyer's performance fell below an objective standard of reasonableness. If he is able to do so, he must then show that there is a reasonable probability that the result of the proceedings would have been different but for his counsel's "unprofessional errors." *Ward v. Jenkins,* 613 F.3d 692, 698 (7th Cir. 2010); see also *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000) (applying same *Strickland* test to claim of ineffective assistance of appellate counsel). Both components of the test must be satisfied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

In analyzing the performance prong, the Court applies a "'strong presumption that counsel's representation was within the wide range of reasonable professional assistance.'" *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). "The central question in this analysis is not whether counsel's conduct 'deviated from best practices or most common custom,' but instead, 'whether an attorney's representation amounted to incompetence under prevailing professional norms.'" *Id*. (quoting *Sussman v. Jenkins*, 636 F.3d 329, 349–50 (7th Cir. 2011)). Trial counsel's "[s]trategic choices

made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and trial counsel's "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. In the case of appellate counsel, the Court examines whether "appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). The performance of appellate counsel is deficient "when counsel omits a 'significant and obvious issue' without a legitimate strategic reason for doing so." *Howard*, 225 F.3d at 790 (quoting *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)); see also *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008).

If the Court finds an attorney's representation to be deficient, it must then decide, under the prejudice prong of *Strickland*, whether there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different,'" *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690, 694), or, in the case of a claim of ineffective assistance of appellate counsel, that the issue appellate counsel failed to raise "may have resulted in a reversal of the conviction, or an order for a new trial.'" *Howard*, 225 F.3d at 790 (quoting *Mason*, 97 F.3d at 893). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). Where counsel's alleged error occurred during the

sentencing phase—or appellate counsel failed to raise an error that occurred at sentencing—the petitioner must show that there was "a reasonable probability that he received additional prison time because of counsel's error." *United States v. Jaimes-Moreno*, 2017 WL 8209106, at *10 (N.D. Ill. Dec. 11, 2017) (citing *Glover v. United States*, 531 U.S. 198 (2001)).

### III.    Analysis

### A.    Whether this Court erred when it assessed 3 criminal history points based on Illinois' constitutionally invalidated Aggravated Unlawful Use of a Weapon (AUUW) statute, 720 ILCS 5/24-1.6(a)(1); and whether Petitioner should be allowed to amend his petition to add an ineffective assistance claim based on counsel's failure to challenge this alleged error on direct appeal[2]

Petitioner argues that he is entitled to habeas relief because his Sentencing Guidelines range was miscalculated. In particular, Petitioner argues that, pursuant to *United States v. Jenkins*, 772 F.3d 1092 (7th Cir. 2014), and the Application Note to the Sentencing Guidelines which *Jenkins* applies, the Court's calculation of criminal history points should not have included his 2003 Illinois state court conviction for Aggravated Unlawful Use of a Weapon ("AUUW"). This is because prior to his sentencing, the AUUW statute had been declared unconstitutional by *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), and *People v. Aguilar*, 2 N.E.3d 321, 328 (Ill. 2013). Petitioner also argues that he should be allowed to amend his habeas petition to add a claim that his appellate counsel was ineffective for failing to raise this sentencing error on direct appeal.

Considering the motion to amend first, the Court will allow Petitioner to add this ineffective assistance claim to his habeas petition. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "courts should grant leave to amend freely only 'when justice so requires.'" *Vitrano v. United States*, 721 F.3d 802, 806 (7th Cir. 2013) (citing Fed. R. Civ. P.

---

[2] This section addresses Ground One of Petitioner's original habeas petition [1] and the new ground raised in Petitioner's motion for leave to amend [14].

15(a)(2)). The Court has "wide discretion" in deciding whether to grant leave to amend, and typically justice does not require leave to amend where there is "undue delay, bad faith, or dilatory motive" or amendment would be futile. *Id*. at 806, 809. In this case, Petitioner filed his motion for leave to amend less than three months after filing his original petition, and less than a month after the Government's brief alerted him of the deficiency in his original motion. See [9] at 13. There are no allegations that Petitioner acted in bad faith or with dilatory motive. Further, as discussed below, the Court concludes that the argument is not futile. Given Petitioner's *pro se* status and the Court's ability to allow amendment where justice requires, the Court concludes that Petitioner should be allowed to amend his habeas petition to assert an ineffective assistance claim based on his counsel's failure to argue that Petitioner should not have been assigned criminal history points for his AUUW conviction. Cf. *Frazier v. Varga*, 843 F.3d 258, 262 (7th Cir. 2016) (*pro se* habeas petitioner are "entitled to a liberal construction" (internal quotation marks and citation omitted)).

Another threshold issue raised by the Government is whether Petitioner's argument is an impermissible collateral attack on his AUUW conviction. The Government relies on *Daniels v. United States*, 532 U.S. 374 (2001), to argue that Plaintiff's "prior conviction [under the AUUW] cannot be challenged in a § 2255 petition in this case." [9] at 12. In *Daniels*, the Supreme Court held that, with the sole exception of convictions obtained in violation of the right to counsel, a Section 2255 petition is not an appropriate vehicle for determining whether a conviction later used to enhance a federal sentence was unconstitutionally obtained. *Daniels*, 532 U.S. at 382. Unlike in *Daniels*, however, Petitioner in this case is not using his Section 2255 petition to obtain a determination that his underlying AUUW conviction was unconstitutional. Instead, Petitioner is arguing, based on *Jenkins* and an application note to the Sentencing Guidelines, that the

AUUW conviction should never have been included in the calculation of his criminal history points because the AUUW was declared unconstitutional and was *void ab initio* at the time Petitioner was sentenced.

Like Petitioner here, the defendant in *Jenkins* had been assigned three criminal history points in his federal sentencing based on his earlier conviction under Illinois' AUUW statute. 772 F.3d at 1094. The Seventh Circuit held on direct appeal that this was error. The court of appeals explained that under the Sentencing Guidelines, "'[s]entences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted'" in calculating the defendant's criminal history points. *Id.* at 1079 (quoting Application Note 6 to § 4A1.2 of the Sentencing Guidelines). According to the Seventh Circuit, "[s]ubsection (B) imposes two requirements in order for a prior sentence to result in an assessment of zero points: (i) the sentence resulted from a conviction that was ruled constitutionally invalid; and (ii) that ruling occurred in a prior case." *Id.* The court held that the first requirement was met in Jenkins' case, because the AUUW had been found facially unconstitutional and therefore, under Illinois law, was "*void ab initio*—that is, 'as if the law never existed.'" *Id.* (quoting *People v. Tellez-Valencia*, 723 N.E.2d 223, 225 (Ill. 1999); citing *Moore*, 702 F.3d at 942, and *Aguilar*, 2 N.E.3d at 328). The court concluded that the second requirement was met, as well, because "Jenkins was sentenced after both *Moore* and *Aguilar* were decided: *Moore* predated Jenkins's sentencing by ten months, and *Aguilar* by one month," and "*Moore* and *Aguilar* are both, therefore, prior cases." *Id.* at 1098.

The Court recognizes that Petitioner was unsuccessful in his attempt to have the Illinois state courts vacate his underlying AUUW conviction. Unfortunately, the Court cannot determine

based on the record here—or on the Illinois state court records that it independently obtained—why Petitioner was denied the relief he sought. However, *Jenkins* does not require a defendant's underlying conviction to be vacated in order for the conviction to be excluded from the calculation of the defendant's criminal history points. In *Jenkins*, the Seventh Circuit rejected the government's argument that the "prior case" requirement meant that the "defendant's sentence [must] have been ruled constitutionally invalid *by the specific court that imposed the sentence*." 772 F.3d at 1098 (emphasis in original). The court of appeals reasoned that "the government's construction would require us to read the rule's indefinite article 'a' to mean 'the' prior case, contrary to the provision's plain language," and "ignores the fact that a decision by the Supreme Court of Illinois is binding on all lower courts, including the court that convicted Jenkins." *Id.*; see also *People v. Smith*, 89 N.E.3d 960, 967 (Ill. App. 2017) ("The Seventh Circuit has … held that it is improper for a district court to assign points for a defendant's prior conviction under the portion of the AUUW statute struck down in *Aguilar*." (citing *Jenkins*, 772 F.3d at 1098)).

Based on *Jenkins*, the Court concludes that Petitioner should not have been assigned three criminal history points for his AUUW conviction. *Moore*—in which the mandate was issued a week before Petitioner was sentenced—is a "prior case," binding on this Court, in which Petitioner's AUUW conviction was ruled unconstitutional. See *Beard v. United States*, 2016 WL 6071775, at *7 (S.D. Ill. Oct. 17, 2016) (explaining that "[t]he Seventh Circuit decided *Moore* on December 11, 2012, but the mandate was stayed 180 days and ultimately not issued until July 9, 2013"). Indeed, the Government concedes that Petitioner's AUUW "conviction is constitutionally unsound since the statue at issue was declared unconstitutional prior to [Petitioner]'s sentencing in this case." [9] at 12.

However, the Government points out, this sentencing error is one that could have been raised on direct appeal, as was done in *Jenkins*. According to the Government, Petitioner's failure to appeal this issue results in procedural default of his habeas claim. Since "attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default," *Sanders*, 398 F.3d at 580 (internal quotation marks and citations omitted), the Court must assess whether the failure of Petitioner's appellate counsel to argue that Petitioner should not have been assigned criminal history points for his AUUW conviction constituted ineffective assistance of counsel.

Considering the first prong of the Strickland test, the Court concludes that Petitioner's appellate counsel provided ineffective assistance by failing to appeal the inclusion of the AUUW conviction in the calculation of Petitioner's Guidelines range. "An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance." *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) (citing *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011)). "Although a miscalculation of the applicable Sentencing Guidelines range is not typically deficient performance, a failure to effectively analyze applicable law and its effect on a defendant's potential sentence is deficient performance." *Lechuga v. United States*, 15 F. Supp. 3d 788, 794 (N.D. Ill. 2014).

Here, Petitioner's appellate counsel failed to analyze *Moore* and *Aguilar* and its effect on the calculation of Petitioner's criminal history points. This was not a "strategic choice[] made after thorough investigation of law and facts," *Strickland*, 466 U.S. at 690, but rather was a legal error that was not caught by counsel (or, admittedly, by this Court, the Government, or probation). Further, on appeal, the argument that Petitioner should not have been assigned

criminal history points for the AUUW conviction would have been the strongest—and the only—argument made by appellate counsel, who filed an *Anders* brief representing to the Seventh Circuit that Petitioner's appeal was frivolous. See *Smith*, 565 F.3d at 352. Notably, Jenkins and Petitioner had appellate attorneys from the same public defender's office, yet counsel argued only in *Jenkins* that, pursuant to *Moore* and *Aguilar*, an AUUW conviction should not be used to calculate the defendant's criminal history points. Under these facts, the Court concludes that appellate counsel's performance was deficient. See *Ramirez*, 799 F.3d at 794 (holding that trial counsel's failure to object at sentencing hearing to defendant's classification as career offender based on two earlier state convictions for assault and to obtain records for those prior convictions amounted to deficient performance, where counsel should have known that defendant's two prior convictions were suspect based on intervening Supreme Court precedent limiting types of offenses that constitute "violent felonies" within the meaning of the Armed Career Criminal Act); *Lechuga*, 15 F. Supp. 3d at 794 (holding that defense counsel's "failure to properly advise Petitioner that he could be held liable for his codefendants' violent acts under RICO" due to his alleged "fail[ure] to sufficiently research and analyze RICO law," "may provide [a] basis for Petitioner's ineffective assistance of counsel claim"); *cf. Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011) (petitioner's 170–month bank robbery sentence was miscarriage of justice, entitling him to relief on motion to vacate sentence, where post-conviction Supreme Court rulings, which applied retroactively and clarified definition of "violent felony" under Armed Career Criminal Act, made clear that defendant was not eligible for categorization of violent offender).

Moving to the prejudice prong of the *Strickland* test, the Court must assess whether there is "a reasonable probability that [Petitioner] received additional prison time because of counsel's

14

error." *Jaimes-Moreno*, 2017 WL 8209106, at *10. If the 3 criminal history points for Petitioner's AUUW conviction had not been included in the calculation of the applicable Guidelines range, then Petitioner's criminal history category would have been III under the version of the Guidelines in effect at the time of sentencing, rather than IV.[3] The Guidelines range for a final offense level of 34 and a criminal history category of III was 188-235 months at that time. Petitioner received a 192 month sentence—which was below the range of 210 to 262 months that was calculated using the incorrect criminal history category of IV, but within the range that would have applied if the correct criminal history category of III had been used.

The Government argues that even if the wrong criminal history category was used, Petitioner was not prejudiced because the sentence he received was within the Guidelines range that would apply if the correct criminal history category had been used. Further, Petitioner's sentence was subsequently reduced—to 168 months—due to an amendment to the Sentencing Guidelines in 2015 that lowered the base offense level applicable to narcotics offenses. But it is fairly easy to see how this case would have unfolded differently had anyone spotted the error in calculating Petitioner's applicable advisory Guideline range at his original sentencing. A three point reduction in Petitioner's criminal history points based on the exclusion of the 2003 AUUW conviction would have shifted Petitioner's criminal history category from IV to III. The corresponding adjustment in the advisory Guideline range would have reduced the range from 210 to 262 months to 188 to 235 months. Because sentencing is more art than science, it is impossible for the Court to say almost five years after the fact precisely what sentence it would have imposed. Nevertheless, the Court can say with confidence that it would have imposed a

_____

[3] See https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2012/manual-pdf/Sentencing_Table.pdf (last visited Apr. 19, 2018).

sentence below the low end of the properly calculated range—most likely in the neighborhood of 170 to 174 months, which would have been proportionally a similar reduction off the low end of the range as the sentence actually imposed (192 months on a range of 210 to 262 months).

Then, in 2015, when Petitioner sought a further reduction to the low end of the newly-applicable range following the Guidelines amendment, the properly calculated range at that time should have been 151 to 188 months based on a total offense level of 32 and a criminal history category of III, instead of 168 to 210 months using the (still incorrect and uncorrected) criminal history category IV. At that time, the Government took the position, based on: (i) a consideration of the § 3553(a) factors, (ii) defendant's offense conduct and criminal history; and (iii) the absence of any substantial misconduct while incarcerated, that the Court should reduce Petitioner's sentence to the bottom of the revised applicable advisory Guideline range of 168 months. R. 124 at 7-8. The Court accepted that recommendation and resentenced Petitioner accordingly. There is no reason to think that both the Government and the Court would not have taken the same approach to resentencing Petitioner—*i.e.*, recommended and adopted a sentence at the low end of the (properly calculated) revised applicable Guideline range—had the Guidelines been properly calculated from the start. The upshot of this analysis is that Petitioner is entitled to relief under the applicable cause and prejudice standard, and the Court therefore reduces his sentence to 151 months.

**B.** **Whether Petitioner's trial counsel rendered ineffective assistance by (1) allegedly representing to Petitioner prior to his plea that he would receive a 3-point reduction for acceptance of responsibility and (2) not moving to withdraw Petitioner's guilty plea[4]**

Petitioner argues that his trial counsel rendered ineffective assistance at the plea phase by allegedly telling him that he would receive a three-point sentencing reduction for acceptance of

---

[4] This section addresses Grounds Two and Four of the habeas petition.

responsibility.  Petitioner asserts that this was clearly erroneous because defendants virtually never receive the reduction when they have been found to have obstructed justice.  Relatedly, Petitioner argues that his trial counsel was ineffective because he did not move to withdraw Petitioner's guilty plea as Petitioner requested prior to his sentencing.  An email attached to Petitioner's brief shows that trial counsel told Petitioner that he could not withdraw his plea based on his unhappiness with the presentencing investigation report, because "there is language in the Plea Agreement to that effect."  [3] at 35.  As to acceptance of responsibility, counsel also told Petitioner that he "wouldn't worry about it because I think the Judge will rule in your favor on the 3 points."  *Id*.  Petitioner asserts that he could have withdrawn his plea for the "fair and just" reason that he did not understand until after entering his plea that "his counsel's pre-plea colloquy representation that an obstruction enhancement does not lead to a loss of acceptance of responsibility credit was likely a misstatement of law."  [17] at 14.

The Court concludes that Petitioner is not entitled to habeas relief on either ground.  As an initial matter, Petitioner offers no support for his underlying premise that defendants virtually never receive a sentencing reduction for acceptance of responsibility when they have been found to have obstructed justice.  While the Court stated at sentencing that it may be "very difficult" to obtain a reduction for acceptance of responsibility after being found to have obstructed justice, it nonetheless recognized that "there are circumstances in which you could get both an obstruction [enhancement] and an acceptance [deduction]."  R. 109 at 69.  Thus, Petitioner has not satisfied *Strickland*'s performance prong.

Petitioner cannot satisfy *Strickland*'s prejudice prong, either.  Petitioner was informed prior to entering his plea that the Government was going to seek an enhancement for obstruction of justice and was reserving its right to object to the three-point reduction for acceptance of

responsibility. Petitioner therefore knew his potential sentencing exposure before pleading guilty and cannot blame his decision to do so on his counsel's advice.

Even if Petitioner had not been warned about the specific sentencing consequences that he complains about now, his habeas claim still would fail because, prior to pleading guilty, he was advised and acknowledged that his sentence could be "more severe than [he was] hoping for or . . . expected," that he would "have no right to withdraw it," and that the Court would make the final determinations as to the applicable Guideline range and his final sentence. R. 108 at 18. "It is well-established that a district court's explanation of the sentencing process to a defendant during the defendant's plea colloquy removes any possible prejudice of counsel's [advice] on the sentencing consequences." *Harrington v. United States*, 2014 WL 553227, at *5 (N.D. Ill. Feb. 12, 2014). Thus, "[e]ven if we assume that counsel's advice regarding the plea was objectively unreasonable," Petitioner cannot show under the *Strickland* prejudice prong that, "absent counsel's erroneous advice, he would not have pled guilty but would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006).

Petitioner's "mere allegation . . . that he would have insisted on going to trial is not sufficient to establish prejudice" in light of his "broad and repeated concessions" at the plea hearing "that he understood his sentence could be more severe than predicted and that he was not relying on a particular sentence in signing the plea agreement and pleading guilty." *Bethel*, 458 F.3d at 719. Like the petitioner in *Bethel*, Petitioner "offers no compelling explanation for his current claim that he would not have pled guilty had he known his sentence would be higher than predicted, a claim that directly contradicts his statements at the change of plea hearing." *Id*. at 718-19 (concluding that Bethel failed to show that he would not have pled guilty but for counsel's alleged failure to inform him that his sentence could be enhanced under the

Guidelines' career criminal provisions, where he "specifically disclaimed that risk at his change of plea hearing"); see also *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (counsel's alleged miscalculation as to sentence defendant would receive upon entering into plea agreement did not prejudice defendant, and thus did not constitute ineffective assistance, where defendant acknowledged during plea colloquy that "the parties' guidelines calculations did not have to be accepted by the court, and that, if not accepted, could not be a basis for withdrawing the plea" and that "whatever counsel had advised him as to the guideline range was subject to revision by the court"); *Hernandez v. United States*, 2015 WL 8986414, at *4 (N.D. Ill. Dec. 16, 2015) (petitioner not entitled to habeas relief for ineffective assistance based on trial counsel's alleged misinformation that his sentences would run concurrently, where petitioner was "fully advised during the plea hearing that the advisory guideline range would be between 151 and 188 months, and that the district court was free to sentence him 'anywhere between 120 months and life'"); *United States v. Lopez-Popoca*, 2012 WL 1247112, at *5 (N.D. Ill. Apr. 12, 2012) (petitioner not entitled to habeas relief for ineffective assistance based on trial counsel's alleged failure to inform him that "his sentence may be enhanced by relevant conduct" and erroneously predicting maximum sentencing exposure, where petition stated under oath at plea hearing "that he understood that the maximum sentence was a term of life imprisonment and that he had no guarantee what the sentence would be, irrespective of anything his lawyer had said"); *United States v. Parker*, 2009 WL 4043177, at *11 (N.D. Ill. Nov. 23, 2009) (petitioner not entitled to habeas relief for ineffective assistance where "[a]ny contention that [petitioner] would not have pled guilty had he known that 120 months was not the worst case scenario but rather was arguably the best case scenario would run head-on into [petitioner's] admissions under oath during the plea colloquy" that "no one had promised him anything to get him to plead guilty").

Petitioner also cannot demonstrate that his trial counsel was ineffective for failing to move to withdraw Petitioner's guilty plea. A defendant does not have an absolute right to withdraw a guilty plea before sentencing, and "[b]ecause the defendant's statements at the plea colloquy are presumed to be true, the defendant bears a heavy burden of persuasion in showing that such a fair and just reason exists." *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008) (citing Fed. R. Crim. P. 11(d)(2)(B)). In this case, the Court concludes that trial counsel's decision not to move to withdraw Petitioner's guilty plea was not deficient because Petitioner cannot show that there was a fair and just reason for allowing him to withdraw his plea. Prior to entering his plea, Petitioner knew that the Government was seeking the obstruction enhancement and might object to the acceptance reduction, and more generally knew the sentencing range he faced and that ultimately it was the Court that would determine his sentence. Therefore, Petitioner is not entitled to habeas relief based on counsel's decision not to move to withdraw his guilty plea. See, e.g., *United States v. Fuller*, 312 F.3d 287, 292 (7th Cir. 2002) (defendant was not entitled to withdraw guilty plea to check kiting charge on basis that, despite plea agreement provision that prosecutor would recommend probation if defendant qualified for it, counsel failed to inform him before his plea that he was ineligible for probation, where defendant had stated under oath at plea hearing that his guilty plea was not induced by promises or predictions about sentencing).

### C.      Whether Petitioner's trial counsel was ineffective due to his allegedly erroneous advice prior to the suppression hearing

Petitioner argues that his trial counsel rendered ineffective assistance prior to the suppression hearing by failing to tell him that if he lost the motion, "it is virtually certain that a court would thereafter apply an obstruction enhancement and not award a 3-point acceptance departure." [17] at 16. Petitioner claims that if he had been given this advice, he would have

opted not to testify at the suppression hearing and, as a result, would not have received the obstruction enhancement or lost the acceptance departure. *Id*.

The Court concludes that Petitioner's argument fails at *Strickland* step one, because Petitioner makes no attempt to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689. "Vigorous representation of a criminal defendant often entails difficult choices that competent (indeed, first-rate) defense attorneys might make differently." *Killingsworth v. Bensko*, 386 F. Supp. 2d 949, 960 (N.D. Ill. 2005). Notably, Petitioner does not argue that there was no potential benefit to his testifying at the suppression hearing, or that he was sure to lose the motion. At the time of his arrest, Petitioner admitted to selling large quantities of drugs. If Petitioner's motion to suppress had been successful, it would have prevented Petitioner's damaging admissions from being used against him and made it more difficult for the Government to establish the relevant drug quantity. The fact that Petitioner's testimony ultimately may have harmed him during sentencing is irrelevant, because his attorney's performance must be evaluated as of the time it was made, not in hindsight. See *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).

Further, Petitioner does not claim that his attorney counseled him to lie to the Court, exposing him to an obstruction enhancement. To the contrary, Petitioner was placed under oath at the suppression hearing and his attorney reminded him that he had "been sworn to tell the truth." R. 107 at 131. And to the extent that Petitioner might fault his attorney for failing to warn him not to lie, "an attorney's failure to explicitly inform his client of the necessity to tell the truth does not constitute the deficient performance necessary for a finding of ineffective assistance of counsel," because "the obligation to be honest with federal court personnel is an obvious duty and responsibility of all." *United States v. Delgado*, 936 F.2d 303, 311 (7th Cir.

1991), *abrogated on other grounds by United States v. Thompson*, 944 F.2d 1331 (7th Cir. 1991); cf. *United States v. Montgomery*, 23 F.3d 1130, 1133 (7th Cir. 1994) (defendant was not deprived of fair trial due to his lawyer asking him about his prior arrest record, even though defendant was pressed to admit on cross-examination that he had been arrested for battery, where testimony was damaging only because defendant did not answer truthfully when asked about his arrest record).

      **D.**      **Whether trial counsel's allegedly ineffective assistance during the sentencing phase led to Petitioner losing credit for acceptance of responsibility and to an erroneous determination of the drug quantity attributable to Petitioner**

Despite his framing of this issue, Petitioner does not identify anything that trial counsel could or should have done at sentencing to prevent Petitioner from losing the acceptance of responsibility credit. Petitioner's counsel argued that Petitioner should receive credit, but the Court was not convinced.

The Court therefore turns to the second part of Petitioner's argument, that his trial counsel provided ineffective assistance by convincing him to admit to distributing 300 grams of crack cocaine, with the understanding he would receive full credit for acceptance of responsibility. Petitioner asserts that, without this admission, the Government could not have satisfied its burden to support the finding that Petitioner was responsible for the distribution of 300 grams.

The Court concludes that Petitioner has not demonstrated that trial counsel's performance was deficient as to drug quantity. The Government presented evidence—Petitioner's own admission following his arrest—that Petitioner should be held responsible for distributing approximately 11 kilograms of cocaine. Petitioner's attorney's advocacy resulted in the Court rejecting the Government's position. Instead, at sentencing, the Court determined that that drug

quantity was "between 280 and 840," the amount Petitioner "admits to and what Poochie Man says he did." [109] at 70. Petitioner's attorney's advocacy—including his advice to Petitioner to admit to the 300 grams—also resulted in the Court awarding him a partial reduction for acceptance of responsibility and sentencing him below the advisory Guidelines range.

## **CONCLUSION**

For the reasons explained above, the Court grants Petitioner's motion for leave to amend [14] and grants in part and denies in part Petitioner's motion to vacate, set aside, or correct his conviction and sentence [1]. Specifically, based on a clear error in regard to the computation of Petitioner's criminal history that went unnoticed by trial counsel, appellate counsel, the Government, and the Court and that prejudiced Petitioner going forward, both at his original sentencing and his re-sentencing following a retroactive amendment to the Guidelines, the Court reduces Petitioner's sentence from 168 months to 151 months in the custody of the Bureau of Prisons. The motion is denied in all other respects.

Dated: April 19, 2018

_____

Robert M. Dow, Jr.
United States District Judge